(C. D. 973)

SAWELSON WHOLESALE Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 14, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon* and *Charles J. Miville*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: ·  Plaintiff herein imported into the United States a quantity of rum in bottles containing 1 gallon or less, a product of and exported from Cuba on July 28, 1941.  The collector of customs at the port of Los Angeles, Calif., assessed regular duty upon this rum at the appropriate rate under the provisions of paragraph 802 of the Tariff Act of 1930, as modified by the supplemental trade agreement between the United States and the Republic of Cuba, effective December 23, 1939 (54 Stat. 1997).  The legality of this assessment is

not in dispute. However, in addition to the regular duty, there was assessed an internal revenue tax of $3 per proof gallon under the provisions of section 600 (a) (4) of the Revenue Act of 1918 (40 Stat. 1057) as amended by title II, section 213 of the Revenue Act of 1940 (54 Stat. 524). It is against this assessment that the present action is brought. Plaintiff claims that the proper internal revenue tax assessable is $2 per proof gallon which, he alleges, was the rate of tax on distilled spirits (which term it is conceded includes rum) in effect on the date of the signing of the trade agreement with Haiti, May 4, 1935 (49 Stat. 3737), and on September 3, 1934, the effective date of the Cuban Trade Agreement (49 Stat. 3559). The basis of this contention is the provision in both the Haitian agreement and the Cuban agreement that all articles upon which duty concessions were made (as per the schedule thereto attached) shall be exempt from all taxes, fees, charges, or exactions, in excess of those imposed or required to be imposed by the laws of the United States in force on the date of the signature of the Haitian agreement and the effective date of the Cuban agreement. Apparently plaintiff has waived the claim under the Cuban Trade Agreement inasmuch as it is not urged in its brief. The contention there made is that the tax of $3 per proof gallon levied on all distilled spirits by section 213 of the Revenue Act of 1940, *supra*, did not apply to the rum here involved because of the provisions of article II of the trade agreement with Haiti, *supra*, and the generalization clause in the Reciprocal Trade Agreement Act (48 Stat. 943).

Said article II is in the following language:

Articles the growth, produce or manufacture of the Republic of Haiti, enumerated and described in Schedule II annexed to this Agreement and made a part thereof, shall, on their importation into the United States of America, be exempt from ordinary customs duties in excess of those set forth in the said Schedule, and from all other duties, taxes, fees, charges, or exactions, imposed on or in connection with importation, in excess of those imposed or required to be imposed by laws of the United States of America in effect on the day of the signature of this Agreement.

On the day of the signature of the Haitian agreement, to wit, March 28, 1935, the Liquor Taxing Act (48 Stat. 313) was in effect. That act amended section 600 of the Revenue Act of 1918, as amended, and so far as pertinent here provided a rate of $2 per proof gallon on distilled spirits effective on and after January 11, 1934 (section (2) (4)).

The Government in its brief contends that the rate fixed by the Revenue Act of 1940, *supra*, under which this rum was taxed, is the proper rate because at the time of this importation, the revenue laws provided that all distilled spirits, produced in or imported into the United States were subject to a tax of $3 per proof gallon (section 213 of the Revenue Act of 1940, *supra*, amending section 2800 of the Internal Revenue Code).

A similar issue was before the court and passed upon in *United States* v. *Rathjen Brothers*, 31 C. C. P. A. (Customs) 70, C. A. D. 250. The question there presented was whether section 710 of the Revenue Act of 1938 (52 Stat. 572), which amended the Revenue Act of 1918 (40 Stat. 1057 at 1105) and increased the tax on all distilled spirits imported into the United States (with certain exceptions not there pertinent) from $2 to $2.25 per proof gallon, was controlling in view of the provisions of article VIII of the Cuban Trade Agreement of 1934, *supra*, the second paragraph of which reads in part as follows:

* * * all articles enumerated and described in Schedule II annexed to this Agreement, with respect to which a rate of duty is specified in Column 2 of the said Schedule, shall be exempt from all taxes, fees, charges, or exactions, in excess of those imposed or required to be imposed by laws of the United States of America in effect on the day on which this Agreement comes into force.

The court held that the statute then in effect and the Cuban Trade Agreement of 1934 with respect to the issue before it, were absolutely irreconcilable and therefore said section 710 being subsequent legislation, superseded by clear implication the portion of the trade agreement above set forth. In arriving at this conclusion the court used the following language:

* * * When the Congress enacted the statute providing that *all distilled spirits imported into the United States* should be subject to an internal revenue tax of $2.25 per proof gallon it certainly must have intended to include imported rum regardless of the size of the containers and regardless of the country from which exported. If we were to hold that the involved merchandise is excepted from the said statute by reason of the quoted provision of the Cuban Trade Agreement of 1934, we would read an exception into the statute, thereby nullifying that portion of the act levying an internal revenue tax on *all distilled spirits imported into the United States.*

It appears to us from the wording of the statute and article VIII of the Cuban Trade Agreement of 1934 that with respect to the issue here the two are absolutely irreconcilable and that therefore the subsequent legislation supersedes by clear implication the quoted portion of that agreement. [Citing cases; italics quoted.]

In the case now before us it is contended by the plaintiff that although the issue here presented resembles that passed upon in the *Rathjen* case, *supra*, it is not controlled by that decision for the reason that here a different trade agreement is involved and a different internal revenue act. In its brief plaintiff contends that the conclusion reached by the court in the *Rathjen* case to the effect that "Congress intended to modify the trade agreement because, when taken literally the statute was in conflict" therewith was not warranted. In support of this contention the case of *Washington* v. *Miller*, 235 U. S. 422, is cited. In that case it was held that a statute which, when "taken literally" would "by reason of the generality of its terms," have effected repeal of a prior statute, did not have such effect.

Plaintiff further contends that the *Rathjen* case is not controlling here for the reason that

> * * * the "saving clause" in the Revenue Act of 1938, relating to international obligations, which was found in the Rathjen case, supra, to be indicative of Congressional intent, is not contained in the Revenue Act of 1940 and therefore is of no consequence here.

It is the opinion of the court and we so hold that the absence of the expression "unless treaty provisions otherwise require" in the Revenue Act of 1940 is not sufficient to render the holding in the *Rathjen* case, *supra*, inapplicable here. It is plain from a perusal of the act of 1940 that Congress, in enacting the same, did insert language similar to that contained in the saving clause of the act of 1938, where it desired to except treaty obligations from certain provisions of the statute. Such language is found in title I, section 8 of the act, where, in providing for certain income taxes, the following language is found:

> No amendment made by this title shall apply in any case where its application would be contrary to any treaty obligation of the United States.

The absence of such a provision in title II of the act is indicative of an intention on the part of the legislative body that the provisions of that title should apply to importations from all countries.

Plaintiff also contends that no conflict was created by the Internal Revenue Act of 1938, because section 710 of that act amended the Revenue Act of 1918, as amended, to the extent of changing the rate of tax therein provided for and of specifying periods of time during which the new rate should apply. Therefore, it is alleged, it is not an act of Congress in conflict with the trade agreement with Haiti of 1935 because by this amendment Congress did not, *in 1938*, as held in the *Rathjen* case, *supra*, enact a "statute providing that *all distilled spirits imported into the United States* should be subject to an internal revenue tax of $2.25 per proof gallon." [Italics quoted.]

Plaintiff bases this contention upon the following reasoning. Congress in section 600 (a) of the Revenue Act of 1918, provided that "all distilled spirits * * * that may be hereafter produced in or imported into the United States" should be taxed at the rate of $2.20 per gallon. Section 900 of the Revenue Act of 1926 reenacted this language in the form of an amendment, but imposed different rates of tax. By the Liquor Taxing Act of 1934, section 600 of the Revenue Act of 1918, as amended, was again amended, but only to the extent of changing the rate of tax. Thereafter, the Haitian Trade Agreement by article II above set forth "froze" the rate which was effective at that time. Plaintiff claims that by the subsequent enactment of section 710 of the Revenue Act of 1938, Congress merely changed the rate of the tax and therefore, said section 710 should not

be construed as being an enactment in 1938 of the provision in section 600, Revenue Act of 1918, that all imported distilled spirits were taxable at the new rate of $2.25 per gallon. On the contrary, it is urged that the Revenue Act of 1938 should be so construed as to accord with the terms of the prior trade agreement as if it read that all imported distilled spirits, with the exception of those covered by the Haitian Trade Agreement, should be subject to the new rate. Plaintiff cites numerous cases which, it is alleged, support its position.

These contentions, with the exception of that relating to the absence of a "saving clause" in the Revenue Act of 1940, are merely a reargument of the questions presented in the *Rathjen* case, *supra*, as to which the petition for certiorari was denied by the Supreme Court (320 U. S. 797). The *Rathjen* case was followed by the Court of Customs and Patent Appeals in *United States* v. *Schenley Import Corp.*, 31 C. C. P. A. (Customs) 74, C. A. D. 251, in which plaintiff's petition for certiorari was also denied (320 U. S. 782). Insofar as those questions are concerned, it is the opinion of the court that the *Rathjen* case is *stare decisis.*

Moreover, we are confronted with a different situation in the instant case than that presented in the *Rathjen* case, *supra*, due to a different state of the law. At the time of the importation of the rum here involved, July 28, 1941, there was in effect a supplementary trade agreement between the United States and Cuba (54 Stat. 1997) which became effective December 23, 1939. Article III of this supplemental agreement amended article VIII of the earlier agreement as follows:

The provisions of Article I and Article III of this Agreement and of the third paragraph of this Article shall not prevent the Government of the United States of America from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

Article I relates to the imposition of customs duties by the Republic of Cuba upon American products. Article III in the third paragraph thereof provides that articles enumerated in the schedule annexed to the agreement shall be exempt from all taxes, fees, charges, or exactions "in excess of those imposed on September 3, 1934, or required to be imposed thereafter by laws of the United States of America in force on September 3, 1934."

By the amendment above set forth it is plain that the Cuban Government expressly released this Government from the obligation it had previously assumed of allowing exemption to Cuban products from any higher internal revenue taxes than those in effect on September 3, 1934, or required to be imposed by laws of the United States in force on that date. Therefore, the wording of the statute here in

issue (section 213 of the Revenue Act of 1940, *supra*) is not in conflict with the supplemental Cuban Trade Agreement in that in the latter the Cuban authorities expressly agree that the United States may impose "a charge equivalent to an internal tax imposed in respect of a like domestic article." Surely we cannot assume that the Cuban Government intended such release as an empty gesture. Presumably the supplemental Cuban Trade Agreement was entered into with full knowledge of the effect of the generalization clause of section 350 (a) of the Tariff Act of 1930, under which Cuban products were entitled to the same rate as that imposed by internal revenue laws on products of countries whose trade agreements with the United States contained no language comparable to that contained in this supplemental trade agreement. The presumption also exists that Congress had knowledge of this amendment to the earlier Cuban Trade Agreement and the result of the generalization clause of the Reciprocal Trade Agreement Act, *supra*, when it enacted the Revenue Act of 1940 here involved, which imposed a tax of $3 per proof gallon on distilled spirits generally, including those produced in the United States. Inasmuch as the Cuban Government had expressly agreed that the United States should be free to impose at any time on the importation of distilled spirits (which term includes rum) a charge equivalent to an internal tax imposed in respect of a like domestic article, it is clear that the imposition of this $3 tax applies to the rum in suit.

For the foregoing reasons we find and so hold that the tax of $3 per proof gallon assessed under the provisions of section 600 (a) (4) of the Revenue Act of 1918, *supra*, as amended by title II, section 213 of the Revenue Act of 1940, was properly assessed, and that the claim of the plaintiff herein should be and the same hereby is overruled.

Judgment will be rendered accordingly.